# In the United States Court of Federal Claims

No. 14-478 C

(Filed July 2, 2015)

**UNPUBLISHED**

| | |
|---|---|
| * * * * * * * * * * * * * * * | * |
| TAMBOLINA SERVICES, INC., | * |
| | * |
|     *Plaintiff*, | *   Contract Dispute; 41 U.S.C. |
| | *   § 7103 (2012); RCFC 12(b)(1); |
|    v. | *   Failure to Present Claim for a |
| | *   Sum Certain to Contracting |
| THE UNITED STATES, | *   Officer. |
| | * |
|     *Defendant*. | * |
| | |
| * * * * * * * * * * * * * * * | * |

  *Archibald J. Thomas, III*, Jacksonville, FL, for plaintiff.  *Samuel B. Kanupp* and *Ronald P. Angerer, II*, Jacksonville, FL, of counsel.

  *Russell J. Upton*, United States Department of Justice, with whom were *Benjamin C. Mizer*, Acting Assistant Attorney General, *Robert E. Kirschman, Jr.*, Director, *Donald E. Kinner*, Assistant Director, Washington, DC, for defendant. *Shoshana O. Epstein*, United States Postal Service, Washington, DC, of counsel.

_____

**OPINION**

_____

**Bush**, *Senior Judge*.

  Before the court is defendant's motion to dismiss brought under Rule 12(b)(1) of the Rules of the United States Court of Federal Claims (RCFC). Defendant's motion to dismiss also encompasses a motion to strike certain

portions of the complaint. For the reasons set forth herein defendant's motion to dismiss is granted and defendant's motion to strike is denied as moot.

## BACKGROUND[1]

### I.     A History of Contract Disputes

Mr. Tamba Manya Momorie is president and chief executive officer of Tambolina Services, Inc. (Tambolina). The company has entered into a number of mail delivery contracts with the United States Postal Service in Florida and Georgia. Such contracts are administered by a contracting officer for the Postal Service based in Memphis, Tennessee. Plaintiff is based in Jacksonville, Florida.

According to the complaint, disputes arose in a number of Tambolina's contracts administered by the contracting officer, Keith Harris. A certain number of these mail delivery contracts were terminated and/or not renewed by Mr. Harris. Compl. ¶ 6. Tambolina contested these contract terminations and non-renewals before the Postal Service Board of Contract Appeals (PSBCA). *Id.* ¶ 17. These appeals were decided in favor of the Postal Service. *See Momorie v. U.S. Postal Serv.*, PSBCA Nos. 6362, 6400, 6409, 6410, 6416, 15-1 BCA P 35874, 2015 WL 558523 (Feb. 9, 2015).

### II.    The Contract Dispute at Issue in This Suit

Rather than take the current contract dispute to the PSBCA, plaintiff filed suit in this court on June 4, 2014 regarding Highway Contract Route (HCR) 32684. Compl. ¶ 18; Def.'s App. at 122. HCR 32684 required the transport of mail from Dunnellon, Florida to Yankeetown, Florida. Compl. ¶ 19. The contract term was from July 1, 2009 through June 30, 2013 and had an annual contract price, as of the time this contract dispute arose, of $34,351.33. *Id.*; Def.'s App. at 57. Mr. Harris terminated HCR 32684 on April 18, 2013 for the convenience of the government. Compl. ¶ 21.

---

[1] The facts recounted here are taken primarily from the complaint along with additional facts provided by the parties' briefs and attachments thereto. Unless otherwise noted, these facts are undisputed for the purposes of deciding the jurisdictional challenge raised by the government.

Pursuant to the termination, contract services were to cease on May 10, 2013. Def.'s App. at 120. Thus, only about fifty calendar days were subtracted from the four-year contract term. On an annual basis, only fifty days of three hundred sixty-five days were subtracted from the contract by the contracting officer's action. Applying this proportion (fifty out of three hundred sixty-five) to the annual contract price, Tambolina might have lost $4706 or some similar amount in contract payments as a result of the termination for convenience. Because no delivery services were performed during those fifty days, Tambolina's lost profits due to the termination for convenience would constitute some lesser amount.

## III.    The Termination Claim

According to the complaint, the termination of HCR 32684 was retaliatory and in bad faith. Compl. ¶ 63. The termination notice, however, stated that "[c]urrent mail processing volumes no longer dictate the need for this service." Def.'s App. at 120. The notice also informed Tambolina of its right to "submit a termination claim" pursuant to the "Termination for the Postal Service's Convenience" clause of the contract. That clause informed Tambolina that payments might be received for "costs incurred by the supplier [of contract services] in connection with the terminated portion of the contract." *Id.* at 39. Nothing in the complaint, or in the contract documents submitted by the Postal Service, shows that such a termination for convenience costs claim was ever received by the contracting officer.

Instead, on April 19 and 25, 2013 Mr. Momorie mailed two letters to the contracting officer which challenged the termination of HCR 32684 as improper. Def.'s App. at 121-24. The contracting officer responded to these letters on June 12, 2013 and provided his "final decision" on the letters under the Contract Disputes Act of 1978 (CDA), 41 U.S.C. §§ 7101-7109 (2012), and the "Claims and Disputes" clause of the contract. Def.'s App. at 125. The contracting officer ruled that the termination for convenience of HCR 32684 was proper and advised Tambolina of its appeal rights. *Id.*

This suit followed. It is important to note, however, that no monetary sum was presented to the contracting officer in Mr. Momorie's letters of April 19 and 25, 2013 to substantiate Tambolina's claim. Nor did these letters identify a

formula which could be used to calculate the damages due Tambolina because of the Postal Service's termination of the contract.[2] The court now turns to its analysis of defendant's jurisdictional challenge to the complaint.

## DISCUSSION

## I.     Standard of Review for a Motion to Dismiss for Lack of Jurisdiction

In rendering a decision on a motion to dismiss for lack of subject matter jurisdiction pursuant to RCFC 12(b)(1), this court must presume all undisputed factual allegations to be true and construe all reasonable inferences in favor of the plaintiff. *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974), *abrogated on other grounds by Harlow v. Fitzgerald*, 457 U.S. 800 (1982); *Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d 746, 747 (Fed. Cir. 1988). Nonetheless, plaintiff bears the burden of establishing subject matter jurisdiction. *Alder Terrace, Inc. v. United States*, 161 F.3d 1372, 1377 (Fed. Cir. 1998) (citing *McNutt v. Gen. Motors Acceptance Corp. of Ind.*, 298 U.S. 178, 189 (1936)). Jurisdiction must be established by a preponderance of the evidence. *Reynolds*, 846 F.2d at 748.

"A trial court may weigh relevant evidence when it considers a motion to dismiss that challenges the truth of jurisdictional facts alleged in a complaint . . . ." *Ferreiro v. United States*, 350 F.3d 1318, 1324 (Fed. Cir. 2003) (citations omitted). The court's fact-finding in this regard is not limited to the pleadings. *E.g.*, *Rocovich v. United States*, 933 F.2d 991, 994 (Fed. Cir. 1991) (citations omitted); *Reynolds*, 846 F.2d at 747. If jurisdiction is found to be lacking, this court must dismiss the action. RCFC 12(h)(3).

## II.     Pertinent Jurisdictional Requirements of the Contract Disputes Act

The CDA is a money-mandating source of law sufficient to confer jurisdiction in this court under the Tucker Act, 28 U.S.C. § 1491 (2012). *See* 28 U.S.C. § 1491(a)(2) (citing 41 U.S.C. § 7104(b)(1)); *Salt River Pima Maricopa*

---

[2]/ One specific allegation in these letters is Mr. Momorie's statement that the contract could not be terminated without first providing sixty-days notice to Tambolina. Def.'s App. at 124. The complaint filed in this case makes no mention of a sixty-day notice provision, perhaps because the contracting officer subsequently informed Mr. Momorie that the sixty-day notice requirement did not apply to HCR 32684. *Id.* at 125-26.

*Indian Cmty. v. United States*, 86 Fed. Cl. 607, 616 (2009) (citations omitted). For this court to take jurisdiction over a CDA claim, however, the contractor must have first presented a written claim to the contracting officer specifying the basis of the claim. 41 U.S.C. § 7103(a)(1)-(2); *see, e.g.*, *M. Maropakis Carpentry, Inc. v. United States*, 609 F.3d 1323, 1328 (Fed. Cir. 2010) (*M. Maropakis*) (stating that "for the Court of Federal Claims to have jurisdiction under the CDA, the contractor must submit a proper claim – a written demand that includes (1) adequate notice of the basis and amount of a claim and (2) a request for a final decision"). For monetary claims, the contractor must state the "sum certain" of its claim. *M. Maropakis*, 609 F.3d at 1329.

## III.  Analysis

Although the parties dispute a number of jurisdictional issues presented by the complaint, the court will focus on only two. First, does the complaint present a monetary claim for damages resulting from the termination of HCR 32684? Second, was a valid monetary claim before the contracting officer so as to provide CDA jurisdiction for a monetary claim in this court? The answers to these questions are determinative of this court's jurisdiction and render the remainder the parties' arguments irrelevant.[3]

### A.  The Complaint Presents a Monetary Claim

The complaint presents three legal theories: (1) breach of contract; (2) breach of the covenant of good faith and fair dealing; and, (3) tortious interference with prospective economic advantage. Compl. at 27-30. Each count of the complaint requests that the United States "pay [plaintiff] damages." *Id.* at 28-31. Although the complaint sets forth no specific amount of damages, it is clear that the requests for relief set forth in the complaint present a monetary claim

---

[3] The court cannot consider other contract disputes that were obliquely referenced in the complaint. The claim before the contracting officer in Mr. Momorie's April 2013 letters exclusively challenged the termination of HCR 32684. Def.'s App. at 121, 123.

for this court's adjudication.[4]

### B. No Valid Monetary Claim Was Presented to the Contracting Officer

As stated above, the April 2013 letters sent by Mr. Momorie do not mention a specific sum for damages owed to plaintiff. Instead, the letters, taken together, set forth a general request that Mr. Harris reconsider his contract termination decision. Plaintiff concedes that there was no sum certain identified in the letters presented to the contracting officer in April 2013. Pl.'s Resp. at 23. The letters thus fail to satisfy the "sum certain" requirement for monetary CDA claims. *See, e.g.*, *K Con Bldg. Sys., Inc. v. United States*, 778 F.3d 1000, 1005 (Fed. Cir. 2015) (restating that court's "longstanding demand that a [CDA] claim adequately specify both the amount sought and the basis for the request"); *Scott Timber Co. v. United States*, 333 F.3d 1358, 1365 (Fed. Cir. 2003) ("'All that is required is that the contractor submit in writing to the contracting officer a clear and unequivocal statement that gives the contracting officer adequate notice of the basis and amount of the claim.'" (quoting *Contract Cleaning Maint., Inc. v. United States*, 811 F.2d 586, 592 (Fed. Cir. 1987))); *Exec. Court Reporters, Inc. v. United States*, 29 Fed. Cl. 769, 775 (1993) (*Court Reporters*) ("As the Federal Circuit has repeatedly noted, a claim must seek payment of a sum certain to satisfy the second prong of the claim inquiry.") (citations and internal quotations omitted).

This court has held that a monetary CDA claim may be saved from a failure to identify a sum certain if a simple mathematical calculation or the contractor's documentary submission to the contracting officer would determine the amount of the claim. *See, e.g.*, *N. Star Alaska Hous. Corp. v. United States*, 76 Fed. Cl. 158, 184 (2007) (*North Star*) (stating that "this court has consistently interpreted the

---

[4] The court does not read the complaint to contain a non-monetary CDA claim. There is neither a request for an interpretation of contract terms nor a request for non-monetary relief related to HCR 32684. Indeed, plaintiff's response to the government's motion to dismiss does not attempt to identify a non-monetary claim but instead attempts to salvage the complaint's monetary claim. *See* Pl.'s Resp. at 24 ("Plaintiff's contract claim can therefore be determined through a mathematical calculation. . . . Further, Plaintiff's claims seeking his consequential loss can also be determined through a mathematical calculation.").

'sum certain' requirement to include amounts in dispute that 'can be easily determined by a simple mathematical calculation or from the contractor's submission to the contracting officer'" (quoting *Metric Constr. Co. v. United States*, 14 Cl. Ct. 177, 179 (1988) and citing *CPS Mech. Contractors, Inc. v. United States*, 59 Fed. Cl. 760, 764 (2004); *Court Reporters*, 29 Fed. Cl. at 775; *Sun Eagle Corp. v. United States*, 23 Cl. Ct. 465, 472 (1991))); *Modeer v. United States*, 68 Fed. Cl. 131, 137 (2005) ("The sum certain requirement is met if the contracting officer can determine the amount claimed by a simple mathematical calculation.") (citations omitted), *aff'd*, 183 F. App'x 975 (Fed. Cir. 2006). Indeed, plaintiff argues that the amount of Tambolina's claim before the contracting officer may be discerned by using a simple mathematical calculation. Pl.'s Resp. at 23-24. The court must disagree.

Simply because the contract documents in the possession of Mr. Harris might have pointed to certain parameters for a claim based on an improper termination of HCR 32684, those parameters do not supply a formula for Tambolina's claim. The contracting officer could not have known whether Tambolina was claiming: (1) $4706, the approximate amount of payment that would have been due under the contract for the remaining fifty calendar days of mail transport; (2) standard termination for convenience costs; (3) breach of contract damages for the balance of HCR 32684; (4) damages for non-renewal of HCR 32684; or, (5) some other amount entirely. The April 2013 letters provided no damages framework which would have enabled Mr. Harris to choose a mathematical formula, simple or otherwise, with which he could have determined the amount of Tambolina's termination claim. The letters cannot, therefore, satisfy the "simple mathematical formula" approach to fulfilling the sum certain requirement for valid CDA monetary claims. *See, e.g.*, *Court Reporters*, 29 Fed. Cl. at 775-76 (holding, in that case, that the sum certain requirement was not satisfied, even through the "simple mathematical formula" approach, because the contractor had not included dollar figures in the claim submitted to the contracting officer); *see also North Star*, 76 Fed. Cl. at 185 (rejecting the "suggest[ion] that administrative claims can be cobbled together from various documents that were possessed by defendant, [when] there are no select group of documents, supplied by plaintiff or otherwise, that provide a 'clear and unequivocal' indication as to the amount sought by plaintiff").

Not only do Mr. Momorie's April 2013 letters fail to provide the basis for any mathematical formula, they also fail to provide any indicators which would have informed Mr. Harris of the monetary amount requested by Tambolina under the CDA and under HCR 32684. The first letter, sent on April 19, 2013, merely identifies an alleged motive for the termination of the contract. Def.'s App. at 122 ("Your decision to terminate this contract is nothing but malice and . . . continued retaliatory action against me . . . ."). The "addendum" to the first letter, sent on April 25, 2013, challenges the propriety of the contract termination on a number of fronts and discloses Mr. Momorie's intent to pursue his rights of appeal, but again fails to provide any information regarding the monetary aspects of Tambolina's claim. *Id.* at 123-24. Thus, in Tambolina's April 2013 submissions to Mr. Harris, there is no indication, clear or otherwise, of the amount of a monetary claim presented for the contracting officer's final decision. *See, e.g.*, *North Star*, 76 Fed. Cl. at 186 (noting that the sum certain requirement cannot be satisfied if the claim submission does not "definitively claim[] all or some specified amount of th[e] costs [identified by the contractor]"). For this reason, the contracting officer had no valid monetary claim under the CDA upon which he could rule, and this court has no jurisdiction under the CDA for the monetary claim presented in this suit. *M. Maropakis*, 609 F.3d at 1329.

**CONCLUSION**

There is no CDA jurisdiction for the monetary claim presented in the complaint because no valid monetary claim was presented to the contracting officer. Further, because the court lacks jurisdiction over this suit, there is no need to reach defendant's request that the court strike portions of the complaint. Accordingly, it is hereby **ORDERED** that

(1)     Defendant's Motion to Dismiss and Motion to Strike, filed October 3, 2014, is **GRANTED in part** as to dismissal of this suit, and **DENIED in part** as to striking certain portions of the complaint;

(2)     The Clerk's Office is directed to **ENTER** final judgment in favor of defendant **DISMISSING** plaintiff's complaint for lack of subject matter jurisdiction, without prejudice; and

(3)      Each party shall bear its own costs.

/s/ Lynn J. Bush
LYNN J. BUSH
Senior Judge